Good morning. May it please the Court, my name is Tanya Peterson and I represent defendant-appellant Jose Verdugo-Munoz. And I would request to reserve two minutes for rebuttal if I could. With the Court's permission, I will confine my argument this morning to the Fourth Amendment issue and request that the sentencing issues that I've raised be submitted on the briefs to preserve them for possible future appeal. VA task force officers and agents lacked probable cause to effect Verdugo-Munoz's arrest and to conduct a warrantless search of his car in this case. They lacked probable cause based on a variety of reasons. The cooperating informant had no known history of reliability. The only indication of any nefarious activity was conducted in Spanish, and none of the agents understood Spanish. And the agents were only able to corroborate very innocent details of the tip that was provided to them or the information that was provided to them, innocent details that were largely observable by the public at large. As a preparatory matter, I would like to address an argument that was raised in the government's responsive brief that was inadvertently overlooked in our reply brief. And that is that the government seeks to distinguish the case of United States v. Hall on which Verdugo-Munoz relies in part on a number of bases. And we responded partially to that argument, but not fully to it. One of the bases the government raised in distinguishing United States v. Hall is that in Hall the cooperating informant had a prior history of providing false information to authorities and that that fact had not been presented to the magistrate who was reviewing the probable cause statement. It is true that in Hall the informant there was saddled with some credibility impediments that are not true of Mr. Calderon in our case. The present record in our case is silent as to any prior history of that regard as to Mr. Calderon. So to that extent, we agree that the cooperating informant in Hall very well may be deemed to be less reliable than Calderon as it relates to prior history. And because of that, Hall may present an even clearer instantiation of the absence of probable cause than what we have here. Having said that, there's nothing in the Hall case or any other case that's been presented to this Court that precludes a finding of no probable cause here simply because Calderon does not have a prior history of false information. Reliability in this context, that is, the probable cause context, is not an all-or-nothing proposition, that is, an informant doesn't have to be deemed to be 100 percent reliable or not reliable at all. All of the cases cited by both parties speak in gradations, that is. Let's talk a little bit about the informant in this case, yes? Certainly. This was not a situation of an anonymous informant. It wasn't. And we, you know, we have certain cautions about those, because an anonymous informant could just be your neighbor who doesn't like you or somebody doing mischief. And this wasn't an informant walking off the street and saying, I have evidence of crime. This was somebody who had something to gain by providing genuine information about somebody else's drug dealing, because presumably he was trying to curry favor with the government in the hopes of getting a better deal for himself. Undoubtedly he was trying to curry favor with the government. And, you know, that is a minus in the courtroom if he testifies, because, you know, he can impeach his credibility. But when it comes to the question whether in the real world he's going to provide evidence of something that is likely to be a crime, you first of all know it is somebody who knows a thing or two about drugs, because he was caught with drugs. This was somebody who was caught dealing drugs, if I understand the record correctly, and somebody who has an incentive to provide useful information about somebody else's guilt. And perhaps most important of all, somebody who has a strong incentive not to send agents down a blind alley by saying, ha-ha, jokes on you, because these people wouldn't like that if that were to happen. So why aren't those – and then on top of that, the setup is there. He talks to them. He says there will be, you know, admittedly innocent details, but the innocent details do check out. Why isn't that more than enough for them to act on? Well, let me respond in several ways. First of all, while it may make common sense that a person in that situation would only want to provide truthful information to extricate themselves from their guilt, we can only speculate as to what would be going through the mind-set of that person, but also this Court in Hall indicated that when you have someone in that type of situation, which the informant in Hall was in that situation, was somebody who had been caught with drugs and then offered to give up his source, this Court said in that case you simply can't tell if that person is, A, giving up truthful information, turning in a competitor, or just making stuff up. I mean, one can't know for sure. But conceding that there is incentive to do that. But for sure isn't the test. If for sure were the test, then we wouldn't ever convict anyone either. Well – We live in a probabilistic world, and particularly when it comes to law, we deal with probabilities. And ultimately even a conviction before a jury is not a certainty. It's a probabilistic assessment of what likely happened. So for sure isn't really the test. Why isn't this enough to say reasonable people dealing with the guy who has every incentive not to, how shall I put it, cause the agent's grief or necessary – obviously they would not be too happy if they get there and the guy is just buying a hamburger, and the agent's doing what's supposed to be a drug bust, and it's nothing of the sort. So he has every incentive not to antagonize the agents, and that gives fairly detailed information as to the situation. Why isn't it enough of a probability for them to act? My response to that, Your Honor, would be that that's certainly a factor that this Court and any court should consider in the entire assessment. But this is an area in which the United States Supreme Court has very clearly stated in Illinois v. Gates that there are no hard-and-fast rules, that there are no in-this-situation-here-is-the-outcome. Well, if there are no hard-and-fast rules, then the situation Judge Kuczynski poses is one we would have to deal with, and he makes a surprisingly persuasive  What is the answer to the argument? Unless you're saying, and you mentioned the case, if you're saying that the Court has previously said that that is not sufficient, that would be fine. But if you're saying this question has not been determined yet, then if it hasn't been determined yet, what is your answer to Judge Kuczynski as to whether his argument doesn't make sense, that this is the reasonable inference to draw? Again, Your Honor, I believe that that's the Court can make the determination that it is a reasonable inference to draw that a person who's just been arrested seeking to curry favor would have incentive not to give false information. But I think it's a leap to get from that to, and so in any case, when someone who has just been arrested gives information, that's enough to prove reliability and ergo probable cause for anything they say. Well, he does a little more than just provide the information. He makes the calls. He arranges for the person to come. He goes with them. He shows, you know, what the circumstances are. It all looks like, smells like a drug deal. It's not as if he were arrested and said, here's a place in Florida. You'll be able to find someone. I mean, this is a under these circumstances, it seems very likely that this is a drug deal. It seems highly probable that that's what he has done. If one takes at face value his words, that is what the conversation was, but the agent's not knowing his words, this looks just as much as though he's arranged a lunch date at a restaurant. There's no way for the agents to know other than him saying, this guy promised to bring me drugs. Nothing else about that necessarily indicates that. They wouldn't find drugs and, you know, they would be sort of unhappy with this guy who's trying to work his way out of a bad situation. He has, you know, it's one of those things where they do something and you don't find out the result. You find out the result pretty quickly. The guy's there, has drugs on him, as, you know, the informant says he will. Then this validates the informant's help and, you know, achieves the informant's purpose of carrying favor with the police. And then he can say, look, sure, I know drugs, but I'm a good guy. I immediately help the government. If he jerks the government around by making a lunch date for somebody and passing off as a drug dealer, they're going to stop him and search the guy's car and find nothing, and then the agents are going to be unhappy with him and he will achieve exactly the opposite purpose. Did you mention United States v. Hall? I did, Your Honor. I'm looking at Hall and I find it unhelpful to you, but maybe I'm misreading it. This is the Judge Kleinfeld opinion? I'm sorry? This is the opinion by Judge Kleinfeld? Yes, Your Honor. This is the portion that we were relying on it for had to do with something other than what we've been discussing so far this morning. And that had to do with whether someone who seeks to curry favor by incriminating themselves in further activities than what the government's already aware of is entitled to additional credibility consideration. I'm sorry, but I thought you said Hall was helpful on this point or relevant on this point. I said that I failed to address the government's argument on Hall distinguishing our case. Oh, no. I'm sorry. I thought you said there was a case that you mentioned that is helpful to you. Judge Reinhart said you said there was a case. There is, Your Honor. And I must have misheard which case it was. No. It was Hall, Your Honor. Wherein the court laid out three possible things that this person seeking to curry favor could be doing. I can... Yeah. But on this point, Hall actually helps the government, doesn't it? It doesn't help you. I don't. I disagree that... I have it in front of me. You can persuade me. I agree that it helps the government on the issue of if you've got a prior known dishonest history, which Hall had and is not present here, that makes that informant that less reliable. But other than that, I believe that Hall supports our position. And how does it support your position? What about it supports your position? That it negates the kind of per se, if you're trying to curry favor with the government by turning somebody else in, that in and of itself should be enough to make you reliable and to, therefore, raise probable causes. Yes, yes. But I don't think you need very much help for that because I don't think anybody has suggested, I don't think the government has suggested that there's a per se rule that if somebody reports to help the government, they are sort of treated as they were sort of telling the gospel truth and, you know, they must be followed. I think this is more of a facts and circumstances approach. And Hall endorses a facts and circumstances approach. In that case, you had the additional fact that the guy was a known liar. But it's ‑‑ I don't think anybody has suggested a per se rule. In that case, Your Honor, perhaps I misunderstood the Court's earlier inquiry. But as long as the issue remains a fact-specific, case-specific inquiry into the interrelated issues of reliability, basis of knowledge, and corroboration, then I think we're on the same page here. And our position is that notwithstanding the fact that this particular informant did understandably have a motivation to help himself, in light of the details he gave ‑‑ Do we give ‑‑ do we give any deference to the district court's determination on this, or is this a de novo review? Well, the district, as I understand it, this Court makes a de novo finding of probable cause as a legal principle, and there's a different standard to be applied to the district court's factual finding, or findings of fact, but as the government pointed out in the responsive brief, the district court didn't make any findings of fact in this case, so I believe it's a de novo consideration for this Court of the issue. Okay. You're a little over your time. Why don't we hear from the government? Thank you. May it please the Court, I am Randall Howell for the United States in this matter. Judge Kavinsky is correct. When you look at the entire facts and circumstances of the case, there was more than a sufficient probable cause. Again, as Judge Kavinsky noted, because they had an informant with them who could be held accountable for any false statements that he may make that would support a finding that the informant is reliable. When you couple that with the fact that what the informant said were going to happen did indeed happen, that added to the quantum of proof for a probable cause. Counsel argues that this is purely innocent conduct, and that's not the case because when the deal was set up, when the lunch date was set up, what the officers observed was that the defendant came out of the, he specifically told the informant where his car was in the parking lot. If you're meeting someone in a restaurant, you know where the restaurant is, telling the person you're meeting exactly where your park is not a very important matter. As the deal became closer to being consummated, the defendant actually came out of the restaurant, hung around his car as if that was his car, which it of course turned out to be. That indicates that the deal is going to go down in the parking lot. When you look at all of the circumstances, as Judge Reinhart said, in the real world, there was more than a sufficient probable cause. This was a McDonald's parking lot? I'm sorry, Your Honor. A fast food parking lot? I... What kind of restaurant? Oh, it was a Mexican seafood restaurant. Right, of course, Mexican seafood. Yes. Okay. As I understand it... So your view is that if you're really making a lunch date, you wouldn't meet at the car in the parking lot? No, because it was clear in this case that the informant and the defendant knew where the restaurant was. But the agents didn't know what was said between the informer and the person under the line. They were entitled to rely on what the informant told them under the circumstances, because as he said, if he were indeed lying about the drug deal and it was in fact a lunch date, the officers would not be very happy with him and he would not receive the benefit of the deal that he actually received. This case is very much like Tarazan, because it was a very similar situation. Although the officers in Tarazan heard the initial conversation setting up the drug deal, when there were further negotiations on the drug deal, the officers were outside and the informant was inside with the defendant, and this court still found there was sufficient probable cause. If there are no further questions... Thank you. Thank you very much. Okay. Case is argued. We'll stand some minutes.
judges: Kozinski, Hug, Reinhardt